## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| LEIGH MYERS, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>      v.<br><br>BASSETT FURNITURE INDUSTRIES, INC.<br><br>                    Defendant. | Case No. 4:23-cv-00026-TTC |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND <u>ATTORNEYS' FEES, COSTS, AND SERVICE AWARD</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY ......................................... 2

   A.   General background ...................................................................................... 2

   B.   The Terms of the Settlement ........................................................................ 3

   C.   Implementation of the Notice Program and Status of Opt-Outs and Objections ............... 4

III.   LEGAL STANDARD ........................................................................................ 4

IV.   ARGUMENT ..................................................................................................... 5

   A.   Plaintiff Satisfies the Fourth Circuit Approval Factors .............................. 5

      1.   The Settlement is Fair. ............................................................................ 6

      2.   The Settlement is Adequate. .................................................................... 8

   B.   Final Certification of the Settlement Class is Appropriate .............................. 12

   C.   Notice Pursuant to the Class Action Fairness Act ("CAFA") was Satisfied ................... 12

   D.   Settlement Class Counsel's Application for Attorney's Fees, Costs, and a Service Award is Reasonable and Should be Granted ...................................................... 13

      1.   The Fee Request is Reasonable Under the Percentage of the Fund Method ............... 13

      2.   A Lodestar Cross-Check Confirms the Reasonableness of the Fee ............................. 19

      3.   Class Counsel's Reasonably Incurred Costs and Expenses ......................................... 26

      4.   The Requested Service Award is Reasonable. ............................................................. 26

V.    CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

*ABC, Inc. v. Primetime 24*,
67 F.Supp.2d 558, 566 (M.D.N.C. 1999) ...................................................................22

*All. Ophthalmology, PLLC v. ECL Grp., LLC*,
No. 1:22-CV-296, 2024 U.S. Dist. LEXIS 113914, (M.D.N.C. June 27, 2024) ............................7

*Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc., Customer Data Sec. Breach Litig.)*,
870 F.3d 763, 770 (8th Cir. 2017) ...................................................................9

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216, 226 (4th Cir. 1978) ...............................................................14, 20

*Beaulieu v. EQ Indus. Servs.*,
No. 5:06-CV-400-BR ALL, 2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009) ................6

*Berry v. Schulman*,
807 F.3d 600, 608 (4th Cir. 2015) ...................................................................5

*Blake v. R&B Corp. of Va.*,
No. 4:23-cv-66, 2023 U.S. Dist. LEXIS 127456 (E.D. Va. July 20, 2023)..................................18

*Boeing Co. v. Van Gemert*,
444 U.S. 472, 478 (1980).............................................................................13

*Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Tr., NA*,
919 F.3d 763, 786 (4th Cir. 2019) .................................................................14

*Dollar Tree Stores, Inc. v. Centro NP LLC*,
No. 07-608, 2008 WL 9371766 (E.D. Va. Dec. 5, 2008). ..........................................23

*Earls v. Forga Contracting, Inc.*,
No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921 (W.D.N.C. June 9, 2020) ..........................18

*Flinn v. FMC, Corp.*,
528 F.2d 1169, 1173 (4th Cir. 1975) ...............................................................11

*GM LLC v. Bill Kelley, Inc.*,
No. 12-51, 2013 WL 5504445 (N.D. W.Va. Oct. 1, 2013) ........................................22

*Gilliam v. Allen*,
62 F.4th 829 (4th Cir. 2023) ........................................................................22

*Halcom v. Genworth Life Ins. Co.*,
Civil Action No. 3:21-cv-19, 2022 U.S. Dist. LEXIS 114524 (E.D. Va. June 28, 2022) ............25

*Henley v. FMC Corp.*,
207 F. Supp. 2d 489, 494 (S.D. W.Va. 2002).................................................10, 11

*Hill-Green v. Experian Info. Sols., Inc.*,
Civil Action No. 3:19cv708, 2023 U.S. Dist. LEXIS 101354, (E.D. Va. Mar. 2, 2023) ..............27

*Hum. Rts. Def. Ctr. v. Todd Ishee, et al.*,
No. 5:21-CV-00469-FL, 2023 WL 8361740 (E.D.N.C. Dec. 1, 2023) ...............................22

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740 (D.S.C. May 14, 2024)........................9

*In re Capital One Consumer Data SEC Breach Litig.*,
No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 213070 (E.D. Va. Nov. 17, 2022)....18, 27
    *In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508, 527 (E.D. Mich. 2003) ......................................................................16
    *In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 2:14-cv-00361, 2018 U.S. Dist. LEXIS 85125 (E.D. Va. Apr. 18, 2018) ......................11
    *In re Dollar Gen. Stores FLSA Litig.*,
2011 U.S. Dist. LEXIS 98162 (E.D.N.C. Aug. 22, 2011) ...........................................................7
    *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
293 F.R.D. 21 (D. Me. 2013)......................................................................................9
    *In re Jiffy Lube Sec. Litig.*,
927 F.2d 155, 159 (4th Cir. 1991) .........................................................................5, 6, 8, 11
    *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices &*
    *Prods. Liab. Litig.*,
952 F.3d 471, 483-84 (4th Cir. 2020) ..........................................................................5
    *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.*,
No. 1:15-md-2627 (AJT/TRJ), 2020 U.S. Dist. LEXIS 181103 (E.D. Va. Sep. 4, 2020)............26
    *In re MI Windows & Doors Prods. Liab. Litig.*,
No. MDL No. 2333, 2015 U.S. Dist. LEXIS 95889 (D.S.C. July 23, 2015)................................27
    *In re MicroStrategy, Inc.*,
172 F. Supp. 2d 778, 791 (E.D. Va. 2001) .........................................................................11, 26
    *In re The Mills Corp. Sec. Litig.*,
265 F.R.D. 246, 255 (E.D. Va. 2009) ............................................................................ *passim*
    *In re Novant Health, Inc.*,
No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949 (M.D.N.C. June 17, 2024) ..................6, 7, 18
    *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283, 339 (3d Cir. 1998).......................................................................................19
    *In re Wayne Farms LLC FLSA Litig.*,
2009 U.S. Dist. LEXIS 123871 (S.D. Miss. Dec. 23, 2009) ........................................................25
    *In re Zetia (Ezetimibe) Antitrust Litig.*,
699 F. Supp. 3d 448, 461 (E.D. Va. 2023) ..................................................................15, 16, 19
    *Kay Co. v. Equitable Prod. Co.*,
749 F. Supp. 2d 455, 473 (S.D. W. Va. 2010) .......................................................................14, 27
    *Kruger v. Novant Health, Inc.*,
No. 1:14CV208, 2016 U.S. Dist. LEXIS 193107 (M.D.N.C. Sep. 29, 2016) .............................27
    *Lamie v. Lendingtree, LLC*,
No. 3:22-CV-00307-FDW-DCK, 2024 U.S. Dist. LEXIS 33632 (W.D.N.C. Feb. 27, 2024) 18, 23
    *Lipuma v. Am. Express Co.*,
406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) .............................................................................16
    *Lopez v. Youngblood*,
No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011)....................................15

*Matthews v. Cloud 10 Corp.,*
No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586 (W.D.N.C. Aug. 27, 2015). ..........7

*McDonnell v. Miller Oil Co.,*
134 F.3d 638, 641 (4th Cir. 1998) .......................................................................15

*MTU Am. Inc. v. Swiftships Shipbuilders LLC,*
No. 1:14-cv-773 (LMB/TCB), 2015 U.S. Dist. LEXIS 88719 (E.D. Va. July 8, 2015) ..............20

*North Carolina Alliance for Transportation Reform, Inc. v. U.S. DOT,*
168 F.Supp.2d 569, 580 (M.D.N.C. 2001) .............................................................22

*Pellegrin v. Nat'l Union Fire Ins. (In re Abrams & Abrams, P.A.),*
605 F.3d 238, 245, 249 (4th Cir. 2010) ...............................................................17

*Phillips v. Triad Guar., Inc.,*
No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016).....................14, 22

*Purdy v. Sec. Sav. & Loan Asso.,*
727 F. Supp. 1266, 1278-79 (E.D. Wis. 1989) .......................................................16

*Rates Tech., Inc. v. Speakeasy, Inc.,*
685 F.3d 163, 172 (2d Cir. 2012)........................................................................16

*Robinson v. Nationstar Mortg. LLC,*
No. 8:14-CV-03667-TJS, 2020 U.S. Dist. LEXIS 262890 (D. Md. Aug. 19, 2020)....................10

*Roldan v. Bland Landscaping Co.,*
No. 3:20-cv-00276-KDB-DSC, 2022 U.S. Dist. LEXIS 227906 (W.D.N.C. Dec. 19, 2022)........6

*Rum Creek Coal Sales, Inc v. Caperton,*
31 F.3d 169, 175 (4th Cir. 1994) ........................................................................21

*Seaman v. Duke Univ.,*
No. 1:15-CV-462, 2018 U.S. Dist. LEXIS 13400 (M.D.N.C. Jan. 4, 2018) ................................11

*Serrano v. Sterling Testing Sys., Inc.,*
711 F.Supp.2d 402, 420 (E.D.Pa. 2010) ...............................................................19

*Sharp Farms v. Speaks,*
917 F.3d 276, 293-94 (4th Cir. 2019) ....................................................................5

*Skochin v. Genworth Fin., Inc.,*
Civil Action No. 3:19-cv-49, 2020 U.S. Dist. LEXIS 212910 (E.D. Va. Nov. 13, 2020).............25

*Solomon v. Am. Web Loan, Inc.,*
No. 4:17-cv-145, 2020 WL 3490606 (E.D. Va. June 26, 2020)....................................10

*Spell v. McDaniel,*
852 F.2d 762, 771 (4th Cir. 1988) .......................................................................26

*Strang et al. v. JHM Mortgage Sec. Ltd. P'ship et al.,*
890 F. Supp. 499, 502 (E.D. Va. 1995) .................................................................15

*Tarlton for McCollum v. Sealey,*
No. 5:15-CV-451-BO, 2021 WL 10319395 (E.D.N.C. Nov. 5, 2021).........................................22

*Thomas v. FTS USA, LLC,*
No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217 (E.D. Va. Jan. 9, 2017).............................19

*Toure v. Amerigroup Corp.,*
2012 U.S. Dist. LEXIS 110300 (E.D.N.Y. Aug. 6, 2012)..........................................................7
*United States v. Manning Coal Corp.,*
977 F.2d 117, 120 (4th Cir. 1992) ...........................................................................................5
*United States v. Tobias,*
935 F.2d 666, 667 (4th Cir. 1991) .........................................................................................13
*Vincent v. Lucent Techs., Inc*.,
2011 U.S. Dist. LEXIS 123780 (W.D.N.C. Oct. 25, 2011)....................................................25
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
396 F.3d 96, 118 (2d Cir. 2005)............................................................................................16
*Weisenberger v. Ameritas Mut. Holding Co.,*
No. 4:21-CV-3156, 2024 U.S. Dist. LEXIS 149359 (D. Neb. Aug. 21, 2024) .................... 23, 24
*West v. Cont'l Auto., Inc.,*
No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404 (W.D.N.C. Feb. 5, 2018)............7


**Rules**

Fed. R. Civ. P. 23(e) ...............................................................................................................5
Fed. R. Civ. P. 23(e)(2) ...........................................................................................................5
Fed. R. Civ. P. 23(e)(C) .........................................................................................................11
Fed. R. Civ. P. 23(e)(2)(D) .....................................................................................................12
Fed. R. Civ. P. 23(h) ..............................................................................................................13


**Statutes**

28 U.S.C. § 1715(b)................................................................................................................12


**Other Authorities**

Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits:*
*Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 316 (2013) ..... 24
*Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. Law Review 937, 945 (2017) ........... 15
Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J.
Empirical L. Stud. 811, 832 .....................................................................................................15
*Manual for Complex Litigation*, § 14.121 (4th ed. 2018) ........................................................ 15
*Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 255
(1985) .....................................................................................................................................15
Sean Farhang, THE LITIGATION STATE: PUBLIC REGULATION AND PRIVATE LAWSUITS IN THE
UNITED STATES 22 (2010) ....................................................................................................... 24
Silber and Goodrich, Common Funds and Common Problems: Fee Objections and Class
Counsel's Response, 17 Rev. Litig. 525, 534 (Summer 1998) ..................................................14
2 Herbert Newberg and Alba Conte, Newberg on Class Actions § 11.41, at 11-85 (2d ed.1992) ..5

## I.    INTRODUCTION

Plaintiff[1] respectfully submits this Memorandum of Law in Support of her Unopposed[2] Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Award.[3]  On October 31, 2024, this Court preliminarily approved the Class Action Settlement Agreement executed by Plaintiff and Bassett Furniture Industries, Inc. ("Bassett" or Defendant"), thereby finding the Settlement to be provisionally fair, adequate, and reasonable, and conditionally certifying the Settlement Class for settlement purposes only. *See* ECF # 38. In light of the significant benefits secured for the class, and its overwhelmingly positive reaction to the settlement, Plaintiff respectfully request the Court grant Final Approval of the Settlement and approve her application for attorneys' fees, costs, and a service award.

The Settlement readily satisfies the Fourth Circuit criteria for Final Approval. After a thorough pre-suit investigation, the filing of a comprehensive Complaint, and extensive, good faith and arm's-length negotiations between counsel experienced in complex class action litigation and facilitated by a highly respected mediator, Bassett agreed to establish a $387,500.00 non-reversionary cash Settlement Fund to be distributed to all Settlement Class Members who submit valid claims. Settlement Class Members can benefit directly from the

---

[1] The capitalized terms used herein are defined and have the same meaning as those used in the Agreement unless otherwise stated. *See* ECF # 27-1.

[2] Defendant does not oppose the *relief* requested in the instant motion but disputes the underlying factual allegations as well as certain factual characterizations and arguments made herein.

[3] Plaintiff notes that this brief exceeds the 25-page limit set by the court's local rules. However, Plaintiff is operating under the assumption that she was given authorization by the Court to file two separate briefs, one in support of final approval and another in support of an application for attorneys' fees and costs and the service award. For efficiency's sake, these briefs have been collapsed into one omnibus submission and the instant brief is comfortably within the 50-page limitation that would be provided for the two briefs in total if filed separately. At the Court's direction, Plaintiff will of course seek relief from the page limitation if this assumption is wrong.

Settlement Agreement in several ways including: compensation for out-of-pocket losses, compensation for time spent addressing the Data Breach, and two (2) years of credit monitoring—or, in the alternative to these benefits—a straightforward cash payment. *See* Settlement Agreement ("S.A."), § 2.3.1-2.3.2(d). The results achieved by the Settlement Agreement are outstanding given the litigation risks faced by Plaintiff and compare favorably with those achieved in other data breach cases.

Moreover, the Settlement has been well received by the Settlement Class. Thus far, the Settlement Administrator has received approximately 1,423 Claim Forms, one request for exclusion, and zero objections to the Settlement. *See* Declaration of Settlement Administrator Regarding Notice of Class Action Settlement, ("Admin Decl.") ¶¶ 16,18-19, attached as Exhibit 1. The Settlement Class' positive response to the Settlement further justifies Final Approval.

In addition, Class Counsel's request for attorneys' fees, costs, and service award also meet the applicable Fourth Circuit criteria, meriting approval. Specifically, the requested $129,154 attorneys' fees and costs payment includes Class Counsel's actual costs incurred and attorneys' fees of approximately one-third of the Settlement Fund, a percentage reasonably and routinely approved by courts in this Circuit and across the nation in similar data privacy class action cases, which is buttressed by Class Counsel's lodestar. Lastly, Plaintiff should be awarded a $4,000.00 service award for serving as Class Representative, consistent with precedent.

## II.      BACKGROUND AND PROCEDURAL HISTORY

### A.      General background

Bassett is a Virigina-based corporation that manufactures and sells furniture, both in-store and on its e-commerce website. *See* Class Action Complaint, ECF # 1 ("Compl.") ¶¶ 15-16. Plaintiff alleges that an unauthorized party had access to Bassett consumers' Private Information

starting in July 2021 and continued to have access for at least twenty-one (21) months. *Id.* ¶ 23. Plaintiff also alleges that Bassett unreasonably delayed notification of the Data Breach for five (5) months after it learned of the incident. *Id.* ¶¶ 22-23. Therefore, Plaintiff alleges her PII was stolen and she subsequently incurred unauthorized charges on her credit card due to Bassett's failure to implement reasonable measures to protect its consumers sensitive data within its position. *Id.* ¶ ¶ 60, 27. Bassett denies these allegations.

Plaintiff filed her complaint against Bassett on October 17, 2023 that asserted various claims arising from the Data Breach. *See generally,* Compl. On May 26, 2024, the Parties participated in a mediation session facilitated by Bruce Friedman, Esq., of JAMS, a mediator experienced in settling data breach class action cases. *See* S.A., P. 2. The Parties negotiated at "arm's length" under Mr. Friedman's guidance, ultimately achieving a result that compensates the Class and ensures its relief. *Id.* Particularly, the Parties concluded that further litigation would be protracted and expensive, especially in light of the uncertainty and risks inherent therein, and determined that it is desirable to effectuate a full and final settlement of the claims asserted in this matter.

Therefore, Plaintiff filed her unopposed Motion for Preliminary Approval on September August 19, 2024. ECF #26. The Court ordered supplemental briefing regarding the aforesaid motion on September 10, 2024, which the Parties filed on September 17, 2024.  ECF #33. The Court ultimately granted preliminary approval on October 21,2024. ECF #38. Plaintiff now files the instant motion seeking Final Approval of the Settlement.

### B.        The Terms of the Settlement

Plaintiff presented the settlement terms in her memorandum in support of preliminary

approval (*see* ECF #27, pp. 3-5), and the Court noted relevant settlement terms in its order

granting preliminary approval. *See* ECF #38. Plaintiff incorporates those materials by reference.

    **C.**    **Implementation of the Notice Program and Status of Opt-Outs and Objections**

In accordance with the Court's Preliminary Approval Order, Angeion Group ("the

Administrator") mailed 7,614 postcard notices on November 27, 2024 Admin. Decl. ¶ 6. A total

of 132 notices were returned to the Administrator as undeliverable without a forwarding address.

*Id.* ¶ 9. The Administrator ran the undeliverable records through an advanced address search. *Id.*

This search produced 99 updated addresses. *Id.* The Administrator re-mailed postcard Notices to

the 99 updated addresses obtained from the advance address search. *Id.* Thus far, the

Administrator has achieved an impressive reach rate of approximately 98.26%, well north of the

70% threshold enumerated in the Federal Judicial Center Guidelines. Admin. Decl. ¶¶ 10-11.

On November 26, 2024, the Administrator established the Settlement Website. *Id.* ¶ 12.

The Settlement Website contains information regarding Claim Form submission and

downloadable documents, including the Long Form Notice, Claim Form, the Settlement

Agreement, the Preliminary Approval Order, and the operative Complaint, and notifies the

Settlement Class of important dates and deadlines. *Id.* The Website also provides the number and

address to contact the Administrator directly and instructions concerning how Class Members

can object or opt-out of the Settlement. *Id.*

The Court previously ordered that Settlement Class Members wishing to object to the

Settlement or to opt-out submit or file formal objections or exclusion requests by January 29,

2025. ECF #38, p. 12. As of January 14, 2025, the Claims Administrator is unaware of any

objections to the Settlement and only one exclusion. Admin. Decl. ¶¶ 19, 18.

**III.**    **LEGAL STANDARD**

As a matter of public policy, settlement is a highly favored means of resolving disputes—particularly in complex cases where substantial judicial resources can be conserved by avoiding litigation. *See* 2 Herbert Newberg and Alba Conte, Newberg on Class Actions § 11.41, at 11-85 (2d ed.1992) (citing cases); *see also United States v. Manning Coal Corp.,* 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). Pursuant to Federal Rule of Civil Procedure 23(e), a class action settlement must be "fair, reasonable and adequate" to merit final approval. Rule 23(e) also requires court approval of any settlement of claims brought on a class basis. "The claims . . . of a . . . class proposed to be certified for purposes of settlement – may be settled ... or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Under Federal Rule of Civil Procedure 23(e), the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.,* 952 F.3d 471, 483-84 (4th Cir. 2020); *see also Sharp Farms v. Speaks,* 917 F.3d 276, 293-94 (4th Cir. 2019).

Simply put, Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a determination that it is fair, reasonable, and adequate: a task left to the sound discretion of the court. *See Berry v. Schulman,* 807 F.3d 600, 608 (4th Cir. 2015). In determining whether a settlement is fair, reasonable, and adequate, the court must consider the factors set forth in Fed. R. Civ. P. 23(e)(2). These factors "almost completely overlap" with those traditionally used by the Fourth Circuit, as set forth in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Plaintiff readily satisfies the factors, warranting Final Approval in this matter.

## IV.    ARGUMENT

### D.    Plaintiff Satisfies the Fourth Circuit Approval Factors

Fourth Circuit courts bifurcate the (fair, reasonable, and adequate) "analysis into

consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Beaulieu v. EQ Indus. Servs.,* No. 5:06-CV-400-BR ALL, 2009 U.S. Dist. LEXIS 133023, at *68-69 (E.D.N.C. Apr. 20, 2009) (citing *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158-59 (4th Cir. 1991)); *accord Roldan v. Bland Landscaping Co.,* No. 3:20-cv-00276-KDB-DSC, 2022 U.S. Dist. LEXIS 227906, at *4-5 (W.D.N.C. Dec. 19, 2022).

### 1.  The Settlement is Fair.

Courts apply a four-factor test to ascertain the fairness of a proposed settlement, to wit: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of law at issue." *In re Jiffy Lube,* 927 F.2d at 158-59. Plaintiff has satisfied all four factors.

***The Posture of the Case at the Time Settlement was Proposed.*** Plaintiff filed her complaint on October 17, 2023, ECF #1, and the case settled after mediation with a well-respected mediator for data breach class action cases and subsequent arms-length negotiations. *See* [Original] Declaration of Jason S. Rathod, August 19, 2024 (ECF #27-2) ("Rathod Orig. Decl."), ¶¶ 16-19. Settlement is to be encouraged and since a trial would be costly and complex, with the results uncertain, the litigation's posture at the time of the Settlement supports a finding of fairness. *Roldan,* 2022 U.S. Dist. LEXIS 227906, at *6-7; *In re Novant Health, Inc.,* No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *17 (M.D.N.C. June 17, 2024) (finding the factor satisfied in a data privacy case that settled before resolution of a motion to dismiss and formal discovery).

***The Extent of Discovery that had been Conducted.*** For this factor, the pertinent inquiry is whether a plaintiff "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *West v. Cont'l Auto., Inc.,* No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404, at *10-11 (W.D.N.C. Feb. 5, 2018). Here, the Parties engaged in informal discovery and substantial discussions in furtherance of the Settlement under the purview of the mediator. Rathod Supp. Decl. ¶ 9. These facts support approval. *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *18; *All. Ophthalmology, PLLC v. ECL Grp., LLC*, No. 1:22-CV-296, 2024 U.S. Dist. LEXIS 113914, at *31 (M.D.N.C. June 27, 2024).

***The Circumstances Surrounding the Negotiations.*** Prior to filing the Complaint, Plaintiff's Counsel conducted an extensive investigation into the facts surrounding the Data Breach. Rathod Supp. Decl. ¶ 9. Based in part on this research, the Parties engaged in a full-day mediation session with a well-regarded and experienced mediator, where they not only exchanged their respective positions and contentions, they also made obvious concessions in furtherance of a resolution. *Id. See West*, 2018 U.S. Dist. LEXIS 26404, at *12 ("The Settlement was not hastily arrived at. Indeed, the Settlement followed lengthy discussions and considerable dialogue between the Parties, as well as arms-length negotiations involving extensive argument and counterargument."); *Matthews v. Cloud 10 Corp.,* No. 4:13-cv-646-FDW-DSC, 2015 U.S. Dist. LEXIS 114586, at *8 (W.D.N.C. Aug. 27, 2015) (unpublished); *In re Dollar Gen. Stores FLSA Litig.,* 2011 U.S. Dist. LEXIS 98162, at *12 (E.D.N.C. Aug. 22, 2011); see also *Toure v. Amerigroup Corp.,* 2012 U.S. Dist. LEXIS 110300, at *7-8 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be procedurally fair, reasonable, adequate, and devoid of collusion after plaintiffs

conducted a thorough investigation and enlisted the services of an experienced mediator.). As a result, this factor supports a finding of fairness.

*The Experience of Counsel in Data Breach Litigation.* Class Counsel are highly-experienced in consumer class actions, particularly those involving data breach litigation. *See, e.g.,* Migliaccio & Rathod LLP ["M&R"] Firm Resume, ECF # 27-2-A. Class Counsel's specialized knowledge and experience in this niche facet of the law placed them in a superior position to weigh the Litigation's strengths and weaknesses in order to arrive at the most favorable settlement for the Class. *See Brown,* 318 F.R.D. at 573 (counsel's "wealth of experience and knowledge in consumer-protection actions" supported the settlement's fairness). Consequently, it is "entirely warranted" for this Court to "pay heed to" experienced Class Counsel's judgment. *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 255 (E.D. Va. 2009). Consequently, this factor is also satisfied.

### 2. The Settlement is Adequate.

In determining whether a settlement is adequate, courts considering the following factors: "1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Jiffy Lube,* 927 F.2d at 159. The instant Settlement satisfies the above-referenced criteria and is therefore adequate.

*The Relative Strength of Plaintiff's Case and Applicable Defenses.* While Plaintiff's Counsel believe in the merits of Plaintiff's claims, they also recognize the risks, costs, and time involved in prosecuting the case through the exhaustion of all appeals. *See* Rathod Orig. Decl. ¶

54-56. Data breach cases involving payment card information are among the most risky because some courts have found that "allegedly stolen Card Information does not include any personally identifying information, such as social security numbers, birth dates, or driver's license numbers" and therefore "there is little to no risk that anyone will use the Card Information stolen in these data breaches to open unauthorized accounts in the plaintiffs' names." *Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc., Customer Data Sec. Breach Litig.)*, 870 F.3d 763, 770 (8th Cir. 2017). Should the case continue, the Parties would engage in costly discovery (including retaining expert witnesses), in addition to class certification briefing and dispositive motion practice. Rathod Orig. Decl. ¶ 55. Each step is rife with risk. *See,* e.g., *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.,* 293 F.R.D. 21 (D. Me. 2013) (discussing the potential for the Court to deny class certification in data breach cases); *see also In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-mn-02972-JFA, 2024 U.S. Dist. LEXIS 86740, at *93-94 (D.S.C. May 14, 2024) (denying plaintiffs' motion to certify the class after years of litigation). Considering the inherent uncertainty of litigation, if this case were to proceed, there is also a non-insubstantial probability that Class Members would receive significantly truncated benefits, or no benefits at all. Rathod Orig. Decl. ¶ 56.

In contrast, the proposed Settlement provides certain and substantial relief to the Class without delay and is within the range of reasonableness, particularly considering the risks of continued litigation. Specifically, the Settlement ensures that any Class Member claiming to have suffered losses because of or reasonably tied to the Data Breach will receive guaranteed compensation, including two (2) years of one-bureau Credit Monitoring Services and one of the following: reimbursement for Out-of-Pocket expenses (up to $10,000), Attested Time spent repairing the aforesaid damages (up to $300), or a one-time cash payment totaling hundreds of

dollars. *See generally* SA § 2. In addition, any amount remaining in the Settlement Fund after all distributions to Class Members will go to the Virginia Legal Aid Society, Inc., the Non-Profit Residual Recipient. *Id.* §§ 1.16, 2.10. Therefore, the Settlement Benefits in combination with the substantial costs and risks inherent in a lengthy trial (and likely subsequent appeal) support a finding that the proposed Settlement benefits are adequate.

*The Anticipated Duration and Expense of Additional Litigation and the Likelihood of Recovery on a Litigated Basis.* In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties face the guarantee that further litigation would be expensive, complex, and time consuming. Rathod Orig. Decl. ¶¶54-56. Particularly, the probable costs of continued litigation with respect to both time and money were high and militate in favor of final approval of the Settlement. *Id.* ¶ 55. Further, the fact that the Settlement eliminates the substantial delay and expense of written discovery, depositions, expert witnesses, class certification briefing, summary judgment motions, trial, and likely appeals (a process that could possibly extend for years and might lead to a smaller recovery, if any), strongly weighs in favor of approval. *See Robinson v. Nationstar Mortg. LLC, No*. 8:14-CV-03667-TJS, 2020 U.S. Dist. LEXIS 262890, at *10 (D. Md. Aug. 19, 2020) ("Here, as in most class actions, there is risk to both parties in continuing towards trial."). Accordingly, this factor also weighs in favor of a finding that the Settlement is adequate.

*The Solvency of Bassett.* There is no indication Bassett will be unable to satisfy a judgment. Ultimately, however, this factor is "largely considered beside the point given the other factors weighing in favor of" final approval. *See Solomon v. Am. Web Loan, Inc*., No. 4:17-cv-145, U.S. Dist. LEXIS 112782, at *17-18 (E.D. Va. June 26, 2020) (citing *Henley v. FMC Corp*., 207 F. Supp. 2d 489, 494 (S.D. W.Va. 2002)).

***Degree of Opposition to the Settlement.*** In the Fourth Circuit, courts afford "great weight" to the adequacy of a settlement "from the point of view of informed class members—as reflected by their opposition, or non-opposition, to the settlement." *Seaman v. Duke Univ.,* No. 1:15-CV-462, 2018 U.S. Dist. LEXIS 13400, at *8 (M.D.N.C. Jan. 4, 2018) (quoting *Jiffy Lube,* 927 F.2d at 159).

In the instant matter, Despite sending direct notice of the settlement to over 7,600 perceived Class members, no one has objected. Admin .Decl. ¶ 19. Further, when Members of the Class were provided notice of the Litigation and the opportunity to exclude themselves from the Class, only one person requested exclusion. *Id*. ¶ 18. "Such a lack of opposition to the Settlement strongly supports a finding of adequacy, for "[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court." *In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. at 668 (citing *Flinn v. FMC, Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975)). Therefore, the dearth of objections and Class Members choosing to opt-out strongly compel a finding of adequacy. *In re Celebrex (Celecoxib) Antitrust Litig.,* No. 2:14-cv-00361, 2018 U.S. Dist. LEXIS 85125, at *12 (E.D. Va. Apr. 18, 2018).

### The Settlement Provides Excellent Benefits and Treats Class Members Equitably.

Lastly, the Settlement is eminently reasonable because the $387,500 non-reversionary Settlement Fund is an excellent result for the Settlement Class, as it will confer guaranteed monetary and equitable benefits, *sans* the risks innate in continued litigation.

The Settlement Fund allocation and method of distributing to the Settlement Class is also reasonable. *See* Fed. R. Civ. P. 23(e)(C). Furthermore, the Claims Process has thus far proven to be effective and simple. Specifically, as of January 10, 2025, 1,423 Claim Forms have been

submitted and more Claim Forms are anticipated, as the deadline to submit a claim is February 28, 2025. *Id.* ¶ 16. In addition, the Settlement treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). For example, each Class Member can submit Claim Forms to receive monetary and equitable relief. S.A. § 2.3.1-2.3.2(d). Moreover, the Settlement Administrator will objectively determine the validity of every claim. Admin. Decl. ¶ 16. As a result, no Settlement Class Member will be treated more favorably than any other. In sum, Final Approval is warranted.

### E.    Final Certification of the Settlement Class is Appropriate

The Preliminary Approval Order analyzed the Rule 23(a) and (b)(3) class certification requirements and conditionally certified the Settlement Class for settlement purposes only. *See* ECF #38, ¶ 4. Nothing has changed since that order was entered that would affect the Court's granting final class certification. As such, for the reasons explained in Plaintiff's Motion for Preliminary Approval, stated in the Court's Preliminary Approval Order, and reiterated in Class Counsel's corresponding Declaration, the Settlement Class should be finally certified for Settlement purposes.

### F.    Notice Pursuant to the Class Action Fairness Act ("CAFA") was Satisfied

CAFA requires a settling defendant to give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8), and protects class members from a settlement that may be deemed unfair or inconsistent with regulatory policies and from class action abuse. On August 29, 2024, the Settlement Administrator mailed the CAFA Notice to the United States Attorney General and other

appropriate officials. *See* Admin Decl.¶ 4. Thus, the CAFA notice requirement has been satisfied.

### G.    Settlement Class Counsel's Application for Attorney's Fees, Costs, and a Service Award is Reasonable and Should be Granted

In a class action settlement, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Further, the Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see United States v. Tobias,* 935 F.2d 666, 667 (4th Cir. 1991) (explaining common fund is an "equitable exception to the "American rule" that parties bear their own costs of litigation"). The common fund doctrine therefore vests the district court holding jurisdiction over the fund to spread the costs of litigation proportionately across all persons benefited by the suit. *Id.*

Class Counsel, with Plaintiff's assistance, have obtained significant results and benefits for the Class in the form of monetary payments and equitable relief via the $387,500 non-reversionary common fund. *See generally,* S.A. § 2. Accordingly, and pursuant to the common fund doctrine and the Settlement Agreement, Class Counsel now apply for a total fee award of one-third of the Settlement Fund, or $129,154 and reimbursement of reasonably incurred expenses of $9,558.57_. Since the Settlement Agreement is the product of skilled and dedicated efforts by Class Counsel in a case involving complex issues of fact and law, the Court should approve these requests.

### 3.   The Fee Request is Reasonable Under the Percentage of the Fund Method

The award of attorneys' fees is within the sound discretion of the trial judge. *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir. 1978). In a class action settlement, "[c]ourts either use the lodestar method, the percentage-of-the fund method, or a combination of both." *Phillips v. Triad Guar., Inc.,* No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *5 (M.D.N.C. May 9, 2016). Although the Fourth Circuit does not mandate the use of the percentage-of-the fund method, district courts in the circuit overwhelmingly apply it in common fund cases. *Id.* *6; *see also Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Tr., NA*, 919 F.3d 763, 786 (4th Cir. 2019), *as amended* (Mar. 22, 2019) ("Courts routinely impose enhanced common fund awards to compensate counsel for litigation risk at the expense of beneficiaries who do not shoulder this risk."); *In re The Mills Corp. Sec. Litig*., 265 F.R.D. at 260 (explaining that "[w]hile the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method[.]").

Here, the percentage-of-the-fund is the appropriate method for calculating Class Counsel's attorneys' fees. This method aligns Class Counsel's interest in being paid a fair fee with the interest of the Settlement Class and achieves a maximum recovery in the shortest amount of time considering the circumstances. *See* Silber and Goodrich, Common Funds and Common Problems: Fee Objections and Class Counsel's Response, 17 Rev. Litig. 525, 534 (Summer 1998) ("Under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class"); *see also Kay Co. v. Equitable*

*Production Co.,* 749 F. Supp. 2d 455, 462 (S.D. W. Va. 2010); *Strang et al. v. JHM Mortgage Sec. Ltd. P'ship et al.,* 890 F. Supp. 499, 502 (E.D. Va. 1995).[4]

To assess the reasonableness of a requested percentage, district courts in this Circuit generally weigh the following factors: (1) the results obtained for the Class; (2) objections by Class members to the settlement terms and/or attorneys' fees; (3) the quality, skill, and efficiency of counsel; (4) the complexity and duration of the case; (5) the risk of non-payment; (6) public policy; and (7) awards in similar cases. *See The Mills Corp.,* 265 F.R.D. at 261; *In re Zetia (Ezetimibe) Antitrust Litig.,* 699 F. Supp. 3d 448, 461 (E.D. Va. 2023).

***Results Obtained for the Class.*** The Fourth Circuit deems "the most critical factor in calculating a reasonable fee award" to be "the degree of success obtained." *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir. 1998). Here, the $387,500.00 non-reversionary Settlement Fund is a significant achievement and provides Settlement Class Members with meaningful and

---

[4] By contrast, the lodestar method has several drawbacks. *See Manual for Complex Litigation,* § 14.121 (4th ed. 2018) ("In practice, the lodestar method is difficult to apply, time consuming to administer, inconsistent in result, . . . capable of manipulation, . . . [and] creates inherent incentive to prolong the litigation . . . ."); *Report of the Third Circuit Task Force, Court Awarded Attorney Fees,* 108 F.R.D. 237, 255 (1985) (enumerating nine deficiencies in the lodestar process and concluding that in common fund cases the best determinant of the reasonable value of services rendered to the class by counsel is a percentage of the fund); *Lopez v. Youngblood,* No. CV-F-07-0474 DLB, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) "Among the drawbacks to the lodestar method . . . are that the lodestar method increases the amount of fee litigation; the lodestar method lacks objectivity; the lodestar method can result in churning, padding of hours, and inefficient use of resources; when the lodestar method is used, class counsel may be less willing to take an early settlement since settlement reduces the amount of time available for the attorneys to record hours; and the lodestar method inadequately responds to the problem of risk."). Perhaps it is unsurprising, then, that the lodestar method has fallen increasingly out of favor. *See, e.g.,* Theodore Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013,* 92 N.Y.U. Law Review 937, 945 (2017) (finding that the lodestar method used only 6.29% of the time from 2009–2013, down from 13.6% from 1993–2002 and 9.6% from 2003–2008); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards,* 7 J. Empirical L. Stud. 811, 832 (2010) (finding that the lodestar method used in only 12% of settlements).

immediate relief representing almost all of the maximum damages that they could have received through litigation. Rathod Orig. Decl. ¶ 57. Given the substantial risks in all data breach litigation, and particularly for those involving credit card information, the Settlement provides an excellent monetary recovery for the Class, along with other benefits, including credit monitoring.

*Objections.* No objections have been filed to date, let alone concerning Plaintiffs' request for attorneys' fees. *See In re Zetia,* 699 F. Supp. at 459-60 (holding that the lack of objections to the settlement agreement strongly supports a finding that it is adequate); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 118 (2d Cir. 2005) ("the absence of substantial opposition is indicative of class approval."); *Lipuma v. Am. Express Co.,* 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

*Quality, Skill, and Efficiency of Counsel*. As Plaintiff's Counsel's declarations illustrate, Class Counsel has a national reputation for its acquired skill in complex class action litigation, particularly in data breach litigation. *See* Rathod Orig. Decl. ¶ ¶ 2-5; *see also* Rathod Supp. Decl. ¶¶ 4-6, attached as Exhibit 2.

*The Complexity and Duration of the Case*. A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more." *Purdy v. Sec. Sav. & Loan Asso.,* 727 F. Supp. 1266, 1278-79 (E.D. Wis. 1989). Indeed, "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *Rates Tech., Inc. v. Speakeasy, Inc.,* 685 F.3d 163, 172 (2d Cir. 2012) (internal citations and quotations omitted).

Here, the case settled early in no small part because of Plaintiff's Counsel's reputation and experience, which enabled counsel to efficiently evaluate the case's strengths and weaknesses, obtain targeted discovery, and reach an advantageous settlement that provides the class with nearly all the value it could receive through litigation. *See e.g.,* Rathod Orig. Decl.; *see also In re The Mills Corp.,* 265 F.R.D. at 262-63 (finding that Counsel's ability to resolve the case at an early stage to be indicative of counsel's "skill and efficiency.").

  *Risk of Nonpayment.* Class Counsel took this complex data breach class action on a contingency fee basis, assuming a significant risk of nonpayment. Rathod Supp. Decl. ¶ 8. The Fourth Circuit has recognized the importance of the risk of non-payment in awarding fees. In a 2010 case, the United States Court of Appeals for the Fourth Circuit reversed the district court's "reduction of attorney's fees from thirty-three percent to a mere three percent," noting that "[t]he chief error in the district court's analysis was its failure to recognize the significance of the contingency fee in this case." *Pellegrin v. Nat'l Union Fire Ins.* (*In re Abrams & Abrams, P.A.*), 605 F.3d 238, 245, 249 (4th Cir. 2010). The Fourth Circuit noted that "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation," stating, "[t]he contingency agreement was, as the saying goes, the key to the courthouse door that allowed [plaintiff] to retain the attorneys who eventually provided for his son's ongoing needs." *Id.* at 245-46. The Fourth Circuit further noted that "contingency fee agreements transfer a significant portion of the risk of loss to the attorneys taking a case," and "[a]ccess to the courts would be difficult to achieve without compensating attorneys for that risk." *Id.* at 246. Stated differently, "plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *Id.* This reasoning applies to the

17

realm of privacy law in spades since there is no shortage of well-paid legal work defending or advising corporations as to their obligations to protect PII. Plus, data privacy cases on the plaintiff side are known to be "particularly risky, expensive, and complex." *Blake v. R&B Corp. of Va*., No. 4:23-cv-66, 2023 U.S. Dist. LEXIS 127456, at *6 (E.D. Va. July 20, 2023) (internal citation and quotation omitted). Plaintiff's Counsel's acceptance of the work on a contingency basis with a significant risk of nonpayment is a strong factor counseling in favor of its fee request. *See* Rathod Supp. Decl. ¶ 8; *see also The Mills Corp.,* 265 F.R.D. at 263.

     ***Public Policy.*** Public policy considerations also "favor a significant award of attorneys' fees above what Class Counsel would have charged on an hourly fee basis," *In re Capital One Consumer Data Security Breach Litig*., No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 213070, at *11 (E.D. Va. Nov. 17, 2022), because attorneys should be incentivized to bring common fund cases like this litigation in which one alternative—thousands of individual small-dollar claims—would not justify the expense of separate litigation. *See id*. ("The class action device, when not abused, serves an important public interest in securing remedies for consumers who, for economic and practical reasons, would be unable to recover on an individual basis.").

     ***The Attorneys' Fees Awards in Similar Cases.*** In the Fourth Circuit, courts have routinely found awards of approximately one-third of the settlement fund to be reasonable. *See, e.g., Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 U.S. Dist. LEXIS 101448, at *10 (W.D.N.C. June 8, 2020) ("Within the Fourth Circuit, contingent fees of roughly 33% are common."). This holds true in data privacy class action settlements as well. *See, e.g., In re Novant Health, Inc.,* No. 1:22-CV-697, 2024 U.S. Dist. LEXIS 107949, at *30 (M.D.N.C. June 17, 2024); *Lamie v. Lendingtree, LLC,* No. 3:22-CV-00307-FDW-DCK, 2024 U.S. Dist. LEXIS 33632, at *5 (W.D.N.C. Feb. 27, 2024). Notably, in affirming a fee award representing

43% of the common fund in a consumer class action over objection, the Fourth Circuit confirmed a requested percentage that approached the upper limit of permissible recovery is not "unheard of." *McAdams,* 26 F.4th at 162. Furthermore, courts have determined that cases with comparatively smaller funds can merit a higher percentage fee award: a consequence of "the perception that large percentages of very large settlements lead to windfalls for attorneys." *Serrano v. Sterling Testing Sys., Inc.,* 711 F.Supp.2d 402, 420 (E.D.Pa. 2010); *see also In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 339 (3d Cir. 1998) (noting inverse relationship of large settlement). Plaintiff's Counsel's request for one-third of the common fund firmly aligns with prevailing jurisprudence in this Circuit and in data breach litigation, and is therefore reasonable. *See* S.A. § 9.

### 4. A Lodestar Cross-Check Confirms the Reasonableness of the Fee

The use of a lodestar cross-check further confirms Class Counsel's requested attorneys' fees are reasonable. Where the lodestar method is used as a mere cross-check, "the court need not exhaustively scrutinize counsels' documented hours as it would if the lodestar method were used as the primary determiner of reasonableness." *In re Zetia*, 699 F. Supp. 3d at 462. A court calculates the lodestar figure by multiplying the hours reasonably expended in an action by a reasonable hourly rate. *Thomas v. FTS USA, LLC,* No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217, at *7-8 (E.D. Va. Jan. 9, 2017) After examining the time and labor required, the Court may apply a multiplier to the lodestar. *Berry,* 807 F.3d at 617 n.9 (noting that using the lodestar method, "the district court multiplies the number of hours worked by a reasonable hourly rate" and it can then "adjust the lodestar figure using a multiplier derived from a number of factors, such as the benefit achieved for the class and the complexity of the case") (citations omitted). Here, there is a ***negative lodestar multiplier*** because of the appreciable time invested in, among

other things, the pre-suit investigation, pleading, settlement discovery, mediation, consummation of the Settlement Agreement, selection and monitoring of the Settlement Administrator, communications with Plaintiff and the Class, and Settlement approval briefing. Rathod Supp. Decl. ¶ 9.

After generating the lodestar, the "reasonableness" of the fee request is tested by considering the twelve factors set forth in *Barber v. Kimbrell's, Inc*, 577 F.2d 216, 226 n.8 (4th Cir. 1978).[5] Importantly, because many of these "considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," the Court need not address all twelve *Barber factors* independently. *See Brown,* 318 F.R.D. at 577 (quoting *MTU Am. Inc. v. Swiftships Shipbuilders LLC,* No. 1:14-cv-773 (LMB/TCB), 2015 U.S. Dist. LEXIS 88719, at *8 (E.D. Va. July 8, 2015)). Here, all relevant factors support Class Counsel's requested fee award.

***Class Counsel's Lodestar Reflects the Time, Labor, and Skill Reasonably Required to Prosecute this Complex Action***. The Court's analysis begins by calculating counsel's lodestar—reasonable hourly rates multiplied by hours reasonably expended. *Grissom,* 549 F.3d at 320. To date, Class Counsel reasonably expended almost 250 hours in the Litigation. Rathod Supp. Decl. ¶ 7.  Class Counsel's hours spent performing the necessary work on behalf of the Settlement Class includes: investigating and gathering evidence in support of the claims resolved by the

---

[5] 1) the time and labor expended; (2) the novelty and difficulty of the questions  raised; (3) the skill required to properly perform the legal services rendered; (4) the  attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. (the "*Barber* factors").

Settlement; drafting the Complaint; engaging in pre-mediation discovery, preparing for mediation, participating in an extensive mediation session, negotiating and drafting the Settlement Agreement with Bassett's counsel; moving for and obtaining Preliminary Approval; and consulting and overseeing the Settlement Administrator's efforts to provide Notice to the Class. *Id.* ¶ 9. Class Counsel estimates additional hours will be spent addressing any inquiries from Settlement Class Members before and after the Final Approval Hearing, preparing for that hearing and working with the Settlement Administrator after Final Approval to make sure the Settlement Fund is distributed pursuant to the Agreement. *Id.* In sum, the hours Class Counsel spent litigating this Action reflect the efforts required to achieve such a substantial result.

***Class Counsel's Hourly Rates are Reasonable.*** Class Counsel's lodestar calculation results in a negative multiplier of 1.72. Rathod Supp. Decl. ¶¶ 10, 12. The full lodestar calculation is set forth in the Rathod Supplemental Declaration. *Id.* An "attorney's actual billing rate provides a starting point for purposes of establishing a prevailing market rate." *Rum Creek Coal Sales, Inc v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (internal quotation and citation omitted). M&R's billing rates and those of local co-counsel Maginnis Howard are also detailed in the Rathod Supplemental Declaration ¶¶ 10, 12. M&R's hourly rates for attorneys in the instant matter are between $350-$1141. *Id.* ¶ 10. Class Counsel's hourly rates are the reasonable and customary complex litigation rates they use in their home districts and have been routinely approved by courts in data privacy litigation cases throughout the country. *Id.* ¶ 13; *see also* M&R Firm Resume (ECF #27-2-A).

Counsel acknowledges that the rates sought for purposes of the lodestar cross-check are higher than those typically approved in this District. Nevertheless, it is appropriate for this Court to credit Plaintiff's Counsels' Washington D.C. when conducting the lodestar cross-

check. When a plaintiff reasonably retains non-local counsel, then when evaluating lodestar, their non-local rates may be considered. *Rum Coal Creek Sales, Inc.*, F.3d at 175, 178. Where the type of work performed is typically handled by non-local counsel, then it is appropriate for non-local counsel to be compensated at their usual rates. *See, e.g., North Carolina Alliance for Transportation Reform, Inc. v. U.S. DOT*, 168 F.Supp.2d 569, 580 (M.D.N.C. 2001) (awarding Laffey matrix rates to Washington D.C. firm); *ABC, Inc. v. Primetime 24*, 67 F.Supp.2d 558, 566 (M.D.N.C. 1999) ("[B]ecause work of this nature is typically handled by attorneys from larger cities, particularly Washington, D.C., and New York, it is appropriate for the court to consider the fees charges by attorneys from those communities in assessing the reasonableness of his fee."); *Tarlton for McCollum v. Sealey*, No. 5:15-CV-451-BO, U.S. Dist. LEXIS 264077, at *10 (E.D.N.C. Nov. 5, 2021), aff'd sub nom. *Gilliam v. Allen*, 62 F.4th 829 (4th Cir. 2023) (appropriate to apply the out-of-district Washington D.C rates for Hogan Lovells' attorneys engaged to handle local civil rights case); *Hum. Rts. Def. Ctr. v. Todd Ishee, et al.*, No. 5:21-CV-00469-FL, 2023 U.S. Dist. LEXIS 213654, at *15 (E.D.N.C. Nov. 30, 2023) ("court finds it appropriate to apply hourly rates based on the Washington, D.C. legal market instead of the market in which this court sits."); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 US. Dist. LEXIS 60950, at *23 (M.D.N.C. May 9, 2016) (crediting out-of-state attorneys' fees in securities class action, even though the partners' rates ranged from $640 to $880 per hour and associates' rates ranged from $375 to $550 per hour). In particular, if non-local counsel offers unique, specialized expertise, courts have discretion to award more than the typical local rate. *See, e.g., Ishee,* No. 5:21-CV-00469-FL, 2023 U.S. Dist. LEXIS 213654, at *11 (crediting plaintiff's representation that there were "few, if any, North Carolina firms with the expertise and resources to represent it" in specialized litigation); *GM LLC v. Bill Kelley, Inc.,* Civil Action No. 2:12-cv-

51, 2013 U.S. Dist. LEXIS 141709, at *23 (N.D.W. Va. Sep. 30, 2013); *Dollar Tree Stores, Inc. v. Centro NP LLC,* No. 2:07cv608, 2008 U.S. Dist. LEXIS 112531, at *13 (E.D. Va. Dec. 5, 2008).

Here, Plaintiff's counsel have extensive, national class action experience, including with data breach class action. In other cases across the country, when Washington D.C. Plaintiffs' counsel has appeared *pro hac vice* and used its considerable experience to secure a favorable outcome, courts have approved their customary LSI Laffey Matrix rates, even in jurisdictions that have a preference of applying lower, local rates. *See Lamie*, 2024 U.S. Dist. LEXIS 33632, at *5-6. (Class Counsel's Washington, D.C. and Minneapolis, MN rates approved for purposes of lodestar cross-check in data breach case); Rathod Supp. Decl., ¶ 10 (listing cases in which M&R's rates have been approved). For example, earlier this year, the federal district court for the District of Nebraska approved the fee request of undersigned counsel's firm and used its rates for purposes of conducting the lodestar cross-check because of counsel's specialized expertise in data breach litigation. *See Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 U.S. Dist. LEXIS 149359, at *11-12 (D. Neb. Aug. 21, 2024) ("While the attorneys in this case bill at significantly higher rates than attorneys in the general locality, the fee award is not unreasonable. … The average billed rate, based on all the attorneys involved, is around $700 per hour, which is much higher than this Court is used to seeing from Nebraska lawyers—but as local counsel pointed out, consumer protection class action cases are rare, and require some specialty.").

Perhaps most importantly, Western Virginia is underserved by attorneys with experience in complex and discovery-intensive data breach cases that often require expert testimony like this one would have if it had been litigated. Hence, to ensure adequate private enforcement of data

privacy and applicable consumer statutes in Western Virginia, out-of-state counsel with such experience must supplement the efforts of local attorneys. If out-of-state counsel are not able to avail themselves of their home rates for such work, they are less likely to accept it. *See* Declaration of Thomas Domonoske, attached as Exhibit 3, ¶ 7; Sean Farhang, THE LITIGATION STATE: PUBLIC REGULATION AND PRIVATE LAWSUITS IN THE UNITED STATES 22 (2010) (articulating why private enforcement of laws will only follow if incentives are properly structured to attract such enforcement from plaintiffs' lawyers); Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 316 (2013)  ("When private class actions supplement or substitute for official regulation … the effect can be to overcome the inefficiency and limitations inherent in governmental enforcement. In combination, the private attorney general concept and the class action serve to subsidize the much-needed private enforcement of public policies … .").

**The Requested Fee is Reasonable in Light of Class Counsel's Lodestar.** Plaintiff seeks an award of $129,154 in attorneys' fees and costs. Plaintiff's counsel's out of pocket costs are $9,918.57, leaving the balance of the outstanding fee request at $119,235.43. Multiplying the hours justifiably expended by Class Counsel's reasonable hourly rates, Class Counsel's lodestar is approximately $204,636.60. Decl. ¶ 10,12. In other words, Plaintiff's fee request is a substantial *negative* multiplier on their lodestar of approximately 1.72.

The requested attorneys' fee is also reasonable even assuming that the rates of Washington D.C. counsel were converted to lower Virginia rates for purposes of the cross-check. This is true because, among other reasons, counsel at their home rates have a substantial negative multiplier and because positive multipliers are commonly approved on a cross-check. *See Weisenberger*, No.

24

4:21-CV-3156, 2024 U.S. Dist. LEXIS 149359, at *12 (noting presence of negative multiplier meant that fee request was reasonable on either application of local or national rates); *Brown,* 318 F.R.D. at 578 (finding Class Counsel's requested fee that represented a negative multiplier of 0.77 was "comfortably below the range of multipliers other courts have found reasonable"); *Halcom v. Genworth Life Ins. Co.,* Civil Action No. 3:21-cv-19, 2022 U.S. Dist. LEXIS 114524, at *38 (E.D. Va. June 28, 2022) (holding class counsel's positive "8.4x multiplier is acceptable and the requested attorney fees are reasonable"); *Skochin v. Genworth Fin., Inc.,* Civil Action No. 3:19-cv-49, 2020 U.S. Dist. LEXIS 212910, at *27 (E.D. Va. Nov. 13, 2020) (finding positive 9.05 multiplier not unreasonable in lodestar cross-check analysis).

*The Remaining Barber Factors Support the Fee Award.* Most of the remaining *Barber* factors have been addressed elsewhere herein, including in regard to the results obtained; the novelty and difficulty of data breach litigation; the customary fee for similar work; the attorneys' expectations in taking on a risky case on a contingency fee basis; and the experience, reputation, and ability of counsel. Counsel will only add that, with the seventh *Barber* factor, the case did impose time limitations. "It is obvious that if the attorneys were working on one case they could not be working on another." *In re Wayne Farms LLC FLSA Litig.,* 2009 U.S. Dist. LEXIS 123871, *10 (S.D. Miss. Dec. 23, 2009). Such is the case here. Plaintiffs' Counsel have busy practices and, as such, the substantial time dedicated to the instant lawsuit precluded them from working on other matters. Rathod Supp. Dec. ¶ 15. With this factor, the size of the counsel's practice area and the time demands of the litigation are relevant. *See Vincent v. Lucent Techs., Inc.,* 2011 U.S. Dist. LEXIS 123780, *13 (W.D.N.C. Oct. 25, 2011) (W.D.N.C. Oct. 25, 2011) (finding that the "small size of the [ten-person] firm," as well as its finite resources, made the firm unable to accept other paying work in order to pursue the litigation). Migliaccio & Rathod LLP has less than 10 attorneys.

*See* M&R Firm Resume. While the firm has the resources to dedicate to this and other cases, they are finite and the investment in time here necessarily precluded pursuit of, and investment in, other work. *Id.*

### 5.  Class Counsel's Reasonably Incurred Costs and Expenses

Class Counsel also request their reasonably incurred costs and expenses of $9,918.57. Rathod Supp. Decl. ¶ 14. "There is no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." *In re MicroStrategy, Inc.,* 172 F. Supp. 2d 778, 791 (E.D. Va. 2001) (citation omitted). Here, Class Counsel's unreimbursed costs were reasonably and necessarily incurred in the prosecution and settlement of the Action. *Id.* Class Counsel's other costs include filing and mailing fees. *Id.*  Each of these costs are deemed "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell,* 852 F.2d at 771 (internal quotation marks omitted); *see, e.g., In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.,* No. 1:15-md-2627 (AJT/TRJ), 2020 U.S. Dist. LEXIS 181103, at *90-91 (E.D. Va. Sep. 4, 2020) (reimbursing costs for "legal research, travel, supplies, and overtime for staff as "reasonable" and "directly related to litigation"). Thus, the Court should consider Class Counsel's litigation costs as reasonable in awarding the full fee and expense request of $129,154.

### 6.  The Requested Service Award is Reasonable.

As mentioned infra, Plaintiff requests, and Bassett does not oppose, a service award of $4,000.00 for her service prosecuting the Litigation and securing the Settlement Class benefits despite the financial and reputational risks at stake and the novel and difficult claims pursued. Considering that plaintiffs in this circuit are routinely granted service awards greater than $10,000, awarding Plaintiff $4,000 in recognition of her considerable contribution is more than

palatable. *See Kay Co.,* 749 F. Supp. 2d at 473 (granting award of $15,000 per plaintiff for six named plaintiffs); *In re MI Windows & Doors Prods. Liab. Litig.,* No. MDL No. 2333, 2015 U.S. Dist. LEXIS 95889, at *16-17 (D.S.C. July 23, 2015) (approving service award of $5,000 for each named plaintiff); *Kruger v. Novant Health, Inc.,* No. 1:14CV208, 2016 U.S. Dist. LEXIS 193107, at *17-18 (M.D.N.C. Sep. 29, 2016) (approving $25,000 service award for each of seven representatives); *See Hill-Green v. Experian Info. Sols., Inc.,* Civil Action No. 3:19cv708, 2023 U.S. Dist. LEXIS 101354, at *15 (E.D. Va. Mar. 2, 2023) ($10,000 service award in consumer class action was "reasonable and within the range of awards granted by courts in this and other circuits"); *In re Capital One,* 2022 U.S. Dist. LEXIS 213070, at *13-14 ($5,000 awards for each class representative).

As such, the Court should approve the instant $4,000 service award in recognition of Plaintiff's time and effort spent, and the results obtained for the absent Settlement Class Members. Specifically, Plaintiff actively participated in the Litigation by gathering and producing key documents, reviewing the Complaint, regularly communicating with Class Counsel, and reviewing and approving the Agreement. Rathod Supp. Decl. ¶ 16. Further, Plaintiff incurred a reputational risk by putting her name on a public complaint and bore a financial burden out of proportion to their individual stake in the matter. *Id.* Consequently, Plaintiff should be commended for taking the initiative to protect the interests of Bassett consumers.

## V.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary and equitable relief. For the reasons discussed above, and for those described in Plaintiff's Memorandum in Support of Unopposed Motion for

Preliminary Approval of Class Action Settlement (ECF #27), Plaintiff respectfully requests this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Class Counsel and Plaintiff as Class Representative for the Class, and award reasonable Attorneys' Fees, Costs, and Service Award.

Dated: January 14, 2025                         Respectfully submitted,

                                                */s/ Jason S. Rathod*
                                                Jason S. Rathod*
                                                Nicholas A. Migliaccio*
                                                Saran Q. Edwards*
                                                Migliaccio & Rathod LLP
                                                412 H Street N.E., Suite 302
                                                Washington, D.C. 20002
                                                Tel: (202) 470-3520
                                                Fax: (202) 800-2730
                                                *Admitted pro hac vice

                                                Ian E. Vance (VSB No. 88062)
                                                Maginnis Howard
                                                7706 Six Forks Rd., Ste. 101
                                                Raleigh, North Carolina 27615
                                                ivance@maginnishoward.com
                                                Tel: (919) 526-0450
                                                Fax: (919) 882-8763

                                                *Counsel for Plaintiff and the Settlement Class*